UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
RICHARD COHEN,

                         Plaintiff,                         <u>MEMORANDUM OPINION
AND ORDER</u>

          -against-                            CV 04-1492 (ETB)

UTICA FIRST INSURANCE COMPANY,

                         Defendant.
--------------------------------------------------------------------------------X

       Plaintiff Richard Cohen commenced the present action against defendant Utica First

Insurance Company ("Utica First") seeking to recover the value of an insurance policy between

Utica First and Mario's Painting Corporation ("Mario's Painting"), a contractor working on

plaintiff's home at the time that plaintiff's home, while under construction, was destroyed by fire

on August 12, 1998.  At the time of the fire, Mario's Painting was the insured under a policy

issued by Utica First and sold to Mario's Painting Corporation by George Wagner Associates,

Inc. ("George Wagner Assocs.").  On or about March 23, 1999, plaintiff commenced an action in

the Supreme Court of the State of New York, County of Nassau, entitled <u>Richard Cohen and Ava

Cohen v. Mario Industries, Inc., Maison de France, Inc. Mario's Painting Corp., Two M.

Lighting Design Ltd., et al.</u>, No. 99-7127 (N.Y. Sup. Ct. 2002) (the "underlying action"), which

resulted in a default judgment against Mario's Painting.  At the inquest, a judgment of

$8,733,543.69 was entered against Mario's Painting. Plaintiff now seeks to enforce Utica First's

duty to indemnify Mario's Painting with respect to the judgment obtained in the underlying state

action. Defendant moves for summary judgment on the ground that George Wagner Assocs. was

not authorized by Utica First to receive notice of an occurrence from Mario's Painting, and that

written notice of the fire, received by Utica First on April 8, 1999, is untimely as a matter of law.

I. <u>BACKGROUND</u>

  The action arises from a fire on August 12, 1998 that destroyed the house of plaintiff Richard Cohen ("Cohen" or "plaintiff"), located at 103 North Cliff Drive, Centre Island, New York (the "property"). (Pl.'s Compl. ¶ 7.) At the time of the fire, various contractors were working on the property, including Mario's Painting. (Pl.'s Compl. ¶ 6.) Mario's Painting was formed in or about 1997, with Mario Llobell ("Mr. Llobell") as President and Cindy Llobell ("Mrs. Llobell"), Mr. Llobell's wife at the time, as Secretary and Vice-President. (Def.'s Rule 56.1 Statement ¶¶ 5-7; Pl.'s Rule 56.1 Statement ¶¶ 5-7.) Prior to the date of the fire, Mario's Painting had obtained a commercial general liability policy with Utica First in the amount of $300,000 per occurrence, which was in effect at the time of the fire. (Utica First Policy ART 1122955 00 ("Mario's Painting Insurance Policy"), annexed as Exh. 7 to Declaration of Jay B. Itkowitz in Supp. of Richard Cohen's Opp'n to Utica First Insurance Company's Motion for Summary Judgment ("Itkowitz Decl").)

  On March 23, 1999, the plaintiff commenced a negligence action in Supreme Court, Nassau County (the "underlying action"), against certain contractors who had been working on the property at the time of the fire, including, <u>inter alia</u>, Mario Industries, Inc. ("Mario Industries"), the general contractor on the property, and Mario's Painting, a subcontractor.[1] On or about March 26, 1999, Mario's Painting was served with a summons and complaint in the underlying action. (Summons and Complaint in <u>Richard Cohen, et al. v. Mario Industries, Inc.,</u>

---

[1] Mario's Painting and Mario Industries are separate and distinct entities.

<u>et al.</u>, No. 99-7127 (N.Y. Sup. Ct. 2002), annexed as Exh. 13 to Itkowitz Decl.)  On March 31,

1999, Mario's Painting sent a letter and a copy of the summons and complaint to George Wagner

("Mr. Wagner") of George Wagner Assocs., the insurance broker through whom Mario's

Painting had purchased the Utica First insurance policy.  (Letter from Cindy Llobell of Mario's

Painting to George Wagner of George Wagner Associates, dated March 31, 1999, annexed as

Exh. 10 to Itkowitz Decl.)  By letter dated April 13, 1999, Utica First informed Mario's Painting

that it received a "general liability notice of occurrence" on April 8, 1999, which contained

Mario Painting's March 31, 1999 letter to Mr. Wagner and the summons and complaint in the

underlying action.  (Letter from Gordon Riebe of Utica First to Mario Llobell of Mario's

Painting, dated April 13, 1999, annexed as Exh. 12 to Itkowitz Decl.)  The letter stated that

because Mr. Llobell knew about the fire occurrence on August 13, 1998 and failed to timely

report it to Utica First, Utica First could not defend nor indemnify Mario's Painting. (<u>Id.</u>)

Thereafter, on March 16, 2000, Mario's Painting answered the complaint and

commenced a third party action against Utica First (the "third party action") seeking defense and

indemnification against potential liability asserted by the plaintiff in the underlying action.

(Third-Party Verified Complaint, annexed as Exh. 14 to Itkowitz Decl.) In February 2002,

plaintiff Cohen moved for leave to intervene in the third party action.  (Pl.'s Compl. at 10.) Utica

First moved to dismiss the third party action on the ground that Mario's Painting had failed to

appear at court conferences and failed to retain counsel as directed by the court.  (<u>Id.</u>)  By order

of the Honorable Anthony J. Parga, J.S.C., dated February 28, 2002, plaintiff's motion to

intervene in the third-party action pursuant to CPLR §§ 1012(a)(3) and 1013 was denied,

because the insurance policy issued by Utica First to Mario's Painting states that no party may

sue Utica under the policy prior to obtaining a judgment against its insured, Mario Painting

Corp., which had yet to occur. (Order by Hon. Anthony J. Parga, J.S.C., dated February 28,

2002, at 2, annexed as Exh. 15 to Itkowitz Decl.; see also Order by Hon. Anthony J. Parga,

J.S.C., dated May 28, 2002, at 2, annexed as Exh. 16 to Itkowitz Decl. (denying plaintiffs'

motion for an order granting reargument of the court's February 28, 2002 order).) On the same

date, Judge Parga also granted Utica First's motion to dismiss the third party action without

opposition, based on third-party plaintiff Mario's Painting's failure to retain new counsel and

failure to appear for court conferences. (Id.) In the February 28, 2002 order, Judge Parga

observed that on December 4, 2000, Mario's Painting had filed a petition under Chapter 7 of the

United States Bankruptcy Code, and listed as unsecured claims the claims made by the plaintiffs

and co-defendants in the underlying state action. (Id.) Judge Parga noted that at the time, the

court could not discern from the motion papers submitted whether all of the parties' claims

against Mario's Painting were discharged by the United States Bankruptcy Court.[2]

     The underlying action was settled against Mario Industries for $2,075,000.00, and the

action was discontinued. as to that entity. (Pl.'s Mem. in Opp'n at 4.) On December 12, 2003,

Judge Parga issued an order of default against Mario's Painting and scheduled an inquest for

January 27, 2004. (Order by Hon. Anthony J. Parga, J.S.C., dated December 12, 2003, annexed

as Exh. 3 to Pl.'s Compl.) Following the inquest, by order dated February 17, 2004, a judgment

against Mario's Painting was entered in the amount of $8,733,543.69. (Order by Hon. Anthony

J. Parga, J.S.C., dated February 17, 2004, annexed as Exh. 17 to Itkowitz Decl.) at 2.) According

---

[2]Under 11 U.S.C. § 727, a corporation that files under Chapter 7 does not qualify for a
discharge of its debts. 11 U.S.C. § 727(a)(1).

4

to the plaintiff, this amount represents $9,384,934.04– the amount requested, set off by the $2,075,000.000 plaintiff received from his settlement with Mario Industries, plus interest as of December 31, 2001. (Pl.'s Mem. in Opp'n at 5.)

On April 9, 2004, plaintiff commenced the instant lawsuit, seeking to recover the full amount of Mario's Painting's insurance policy with Utica First ($300,000 per occurrence, here, $600,000.00), pursuant to New York Insurance Law § 3420.[3] (Pl.'s Compl. 7-8.) On November 17, 2005, Utica First filed the instant motion for summary judgment, seeking an order declaring that "(1) George Wagner Associates, Inc. is not an agent of Utica First Insurance Company for notice and (2) Mario's Painting Corp. failed to provide Utica First Insurance Company with timely notice as a matter of law." (Notice of Mot. of Utica First Insurance for Summary Judgment at 1.)

While defendant does not raise the argument of estoppel, it bears brief mention at the

---

[3]New York Insurance Law § 3420(a)(2) requires that all insurance policies issued or delivered in New York contain a provision for direct actions against insurers, as follows:

> in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may. . . be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of the coverage under such policy or contract.

N.Y. Ins. Law § 3420(a)(2).

New York Insurance law Section 3420(b)(1) then provides that, subject to the conditions set forth in Section 3420(a)(2), an action may be maintained against an insurer to recover the amount of a judgment against the insured by "any person who. . .has obtained a judgment against the insured or his personal representative for damages for injury sustained or loss or damage occasioned during the life of the policy or contract." N.Y. Ins. Law § 3420(b)(1).

outset.[4]  "Collateral estoppel applies when the party against whom it is sought had a full and fair opportunity to contest the decision claimed to be dispositive of the present action, and the issue in the prior action is identical to the issue in the current action."  JCD Int'l Gem Corp. v. Evanston Ins. Co., No. 94 Civ. 5315, 1995 WL 491337, at * 4 (S.D.N.Y. Aug. 17, 1995) (citing Gramatan Home Invest. Corp. v. Lopez, 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 311 (1979)).

For the doctrine to apply, the defendant here (Utica First) need not have been named in the prior action, as long as it was in privity with the defendant in the prior action (Mario's Painting).  However, even if plaintiff here could demonstrate that Utica First was in privity with Mario's Painting in the prior action, because the prior action resulted in a default judgment, plaintiff cannot not demonstrate that issues related to Mario's Painting policy with Utica First were adjudicated in that action, and thus identical with that action.  JCD Int Gem Corp., 1995 WL 491337, at * 5.  "Unless the court issuing the judgment considered and ruled on the policy, defendant is not collaterally estopped to assert defenses based on the terms of the policy between it and [its insured]."  Id.  See also Perez v. Nationwide Mut. Fire Ins. Co., No. 01 Civ 2135, 2001 WL 716924, at *2 (S.D.N.Y. June 25, 2001) (rejecting plaintiff's argument that the state court judgment by default gives rise to collateral estoppel on any issues going to the merits of the

---

[4] The companion concept to collateral estoppel– res judicata (claim preclusion)– is not relevant here.  "Claim preclusion prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised."  Murphy v. Gallagher, 761 F.2d 878, 879 (2d Cir. 1985). Plaintiff could not have raised his claim against Utica First in the previous suit because, as Judge Parga noted in his decision, "the insurance policy issued by Utica First Insurance Company ("Utica") to Mario Painting Corp. states that no party may sue Utica under the policy prior to obtaining a judgment against its insured, Mario Painting Corp., which has yet to occur. . . Utica's motion to dismiss the third party complaint is denied since no action lies against Utica until there is a judgment against Mario Painting Corp."  Richard Cohen, et al. v. Mario Indus. Inc., et al., No. 99-7127 (N.Y. Sup. Ct. May 28, 2002).

underlying claim); <u>Robbins v. Michigan Millers Mut. Ins. Co.</u>, 236 A.D.2d 769, 653 N.Y.S.2d 975 (N.Y. App. Div.  3rd Dep't 1997) (same).

II.     <u>FACTS</u>

     A.     <u>Issuance of the Utica First Insurance Policy and Notice of Loss Procedures</u>

          1.     <u>Deposition Testimony of Mario and Cindy Llobell</u>

At the time of the fire, Mario's Painting was owned and operated by Mario Llobell ("Mr. Llobell"),who testified that he was the president of the corporation and that his wife at the time, Cindy Llobel ("Mrs. Llobell"), was the vice-president and handled all of the paperwork.  (Deposition of Mario V. Llobell ("Mr. Llobell Dep."), dated April 13, 2005, at 5-6.) Mr. Llobell testified that he formed Mario's Painting in or about 1997 (<u>id.</u> at 27), and that his company was hired by Mario Industries in 1998 (the general contractor, unrelated to Mario's Painting) to do painting work at plaintiff's house.  (<u>Id.</u> at 8-9.)  From approximately July 24, 1997 to July 24, 1998, Mario's Painting was insured under a general liability insurance policy issued by Maryland Casualty Insurance Company ("Maryland Casualty"). (Utica First 56.1 Statement ¶ 8; <u>see</u> Mr. Llobell Dep. at 30-31; Deposition of Cindy Llobell ("Mrs. Llobell Dep."), dated April 19, 2005, at 5.)  Mr. Llobell testified that in July of 1998, his wife went to the offices of George Wagner Associates, Inc. ("George Wagner Assocs.") to meet George Wagner ("Mr. Wagner") to purchase a new insurance policy.  (Mr. Llobell Dep. at 30.)  Mr. Llobell testified that his wife hand delivered two checks to pay in full for a one year insurance policy, effective July 24, 1998 to July 24, 1999.  (<u>Id.</u> at 31-33, 121.)  Mr. Llobell testified that the policy was with Utica First, and that it took effect immediately upon the expiration of the Maryland Casualty policy– approximately ten days before the fire occurred.  (<u>Id.</u> at 31.)

Mrs. Llobell testified at her deposition that she went to meet Mr. Wagner of George Wagner Assocs. to obtain a new insurance policy (Mrs. Lobel Dep. at 23-24, 36.)  She testified that she gave him a check made out to George Wagner Associates, and that her understanding upon leaving Mr. Wagner's office that day was that Mario's Painting had general liability insurance coverage.  (Id. at 38.)  She first testified that Mr. Wagner told her he was going to place the policy with a company she recalled as "Utica," but she later testified that she did not recall if she was told the name of the company issuing the policy.  (Id. at 35,38.)  Mrs. Llobell also testified that Mr. Wagner did not tell her he was an agent for Utica First.  (Id. at 37, 41.)  When asked if she understood at the time that George Wagner Assocs. was an insurance broker company, she testified, "I don't know the difference between an agent.  I would not have thought back then if he was an agent or broker.  I just knew that he sold insurance."  (Id. at 37-38.)  Mrs. Llobell testified that prior to the fire that occurred on August 12, 1998, Mario's Painting had received a "cover sheet and page that told us what our limits were," which she thought was the policy.[5]  (Id. at 39, 54.)  She testified that prior to August 12, 1998, Mario's Painting never received a complete copy of the Utica First insurance policy, and she stated that she later learned that there was no policy.  (Id. at 39.)

2.      Testimony of George Wagner

George Wagner, the principal of George Wagner Associates, an insurance agency, testified that he is authorized to do business as an insurance broker and insurance agent.

---

[5] The record does not indicate the full extent of the information contained on the document Mrs. Llobell was provided.  Specifically, it is unclear if the document identified George Wagner as an "agent" of Utica First.

(Deposition of George Wagner, dated June 21, 2005 ("Wagner Dep."), at 5-6, 11-12.)  Mr.

Wagner testified that he has a broker's license and an agent's license.  (Id. at 9-10.)  According

to his testimony, the distinction between an insurance broker and an insurance agent is that

"[w]hen you are a broker, you have no binding authority or powers, as where an agent, you

represent the company directly and you combined, the company as their representative."  (Id. at

10.)  Mr. Wagner testified in 1998, he was authorized to bind policies on behalf of Utica. (Id. at

38.)


     Mr. Wagner testified that he did not have a specific recollection of meeting with Mrs.

Llobell and selling her the Mario's Painting policy.  (Id. at 32.) However, upon review of the

Mario's Painting insurance application (annexed as Exh. 6 to Itkowitz Decl.), he testified that he

had "bound the policy that day," meaning that he told Utica First to issue the policy that day. He

further testified that it was a direct bill plan, meaning that, according to Mr. Wagner's customary

business practice, the check from Mrs. Llobell would have been made payable directly to Utica.

(Id.) Mr. Wagner testified that when a policy was bound pursuant to an application, he typically

did not give the client a binder to take home unless the client requested one.  (Id. at 39.)  He

stated that if he gave the client a binder, he would indicate as much on the application.  (Id. at

39-40.)  Mr. Wagner could not recall if he gave Ms. Llobell a binder, and the Mario's Painting

application does not indicate that Ms. Llobell received a binder.  (Id. at 38-40.)  Mr. Wagner also

testified, however, that normally he would give the client an "Acord" certificate, which

contractors need to show proof of coverage to Consumer Affairs or other individuals.  (Id.)

     When questioned about his procedure for reporting a loss, Mr. Wagner testified his

practice was that when one of his clients called to report a loss, he would not take the claim verbally, but would instead insist that the client send him the claim in writing.  (Id. at 16, 26.) Wagner testified that once he received the client's written claim letter, he would complete his own notice of occurrence on a form called an "Acord,"  and send it to the company, along with the client's letter and any summons.  (Id. at 16, 29.)

Mr. Wagner testified that when clients reported a loss to him it was in his capacity as either a broker or an agent.  (Id. at 17.)  Wagner testified that he was an authorized agent of Travelers, Hartford, Utica First, and Kemper, and that of those companies, he was authorized to receive notice of loss on behalf of "Utica First, basically all of them."  (Id. at 17-18.)   He stated that he did not have specific written authority in his contract with Utica First to receive notice of loss on their behalf, but that "[i]t's very standard in the industry. . . ," id. at 19, 23, 45, and that Utica First did not require losses to be reported directly to them, as do some other companies. (Id. at 45.)  When pressed on the issue of whether he was a broker or an agent for Utica First with regard to Mario's Painting, Mr. Wagner repeatedly testified that he would receive notice of the loss in either capacity.  (Id. at 45-47.)

    B.       Testimony Concerning the Fire Loss

        1.      Testimony of Mario and Cindy Llobell

Mr. Llobell testified that the day before the fire, August 11, 1998, he and two others sanded and finished a closet, and left the house around 4:30 p.m. when they were finished working.  (Mario Llobell Dep. at 10-11, 15.)  He testified that the only things they left behind in the house were three closed gallons of lacquer.  (Id. at 14.)  Mr. Llobell stated that when he left, there were approximately twenty people working inside the house.  (Id. at 16.)  He testified that

the when he returned to the job site the next day, August 12, 1998, he saw that the house was burned down and the fire department was there. (<u>Id.</u> at 17.) He stated that he recalled being interviewed at some point by the fire department and an insurance investigator. (<u>Id.</u>) Mr. Llobell testified that on or about August 12 or August 13, 1998, he told his wife that the house caught on fire, and he asked her to call the insurance broker. (<u>Id.</u> at 22.) He stated that he did not believe the fire was his fault, based on his conduct and what various people, including the fire marshal, the insurance investigator, and the plaintiff, told him (<u>id.</u> at 23-24), but that he told his wife to call the insurance broker to "make sure everything is okay," because that is what a person is "supposed to do" when something happens on a job. (<u>Id.</u> at 24-25, 97.)

Mrs. Llobell testified that on August 13, she retrieved George Wagner's phone number from the company rolodex and called him. (Cindy Llobell Dep. at 50-51, 54.) Mrs. Llobell testified that she spoke with Mr. Wagner directly, explained that the house that Mr. Llobell was in the middle of painting had burned down, and asked him what they should do. (<u>Id.</u> at 52.) She testified that "he asked if they are suing us, and we said no. He said then don't do anything unless you are served with papers." (<u>Id.</u> at 52.) Mrs. Llobell testified that when she contacted Mr. Wagner on August 13, 1998, she was not aware of any responsibility of Mario's Painting to put its insurance company on notice of a loss or accident right after it took place. (<u>Id.</u> at 62.) She stated that she thought Mr. Wagner was the contact person for Utica First (<u>id.</u> at 107), and that she didn't believe that Mario's Painting ever got anything directly from Utica First without coming first through Mr. Wagner. (<u>Id.</u> at 87.) She testified that she did not follow up on the August 13, 1998 phone call with Mr. Wagner (<u>id.</u> at 62), and that the next time she spoke with

Mr. Wagner was when she and Mr. Llobell were served with a copy of the summons and complaint in plaintiff's underlying action, in March of 1999. (Id. at 55-56.)

On March 31, 1999, Mrs. Llobell of Mario's Painting sent a letter and a copy of the summons and complaint in the underlying action to Mr. Wagner. (Letter from Cindy Llobell of Mario's Painting to George Wagner of George Wagner Associates, dated March 31, 1999, annexed as Exh. 10 to Itkowitz Decl.) By letter dated April 13, 1999, Utica First acknowledged to Mario's Painting that it had received a "general liability notice of occurrence" on April 8, 1999, which contained Mario Painting's March 31, 1999 letter to Mr. Wagner and the summons and complaint in the underlying action. (Letter from Gordon Riebe of Utica First to Mario Llobell of Mario's Painting, dated April 13, 1999, annexed as Exh. 12 to Itkowitz Decl.) The letter stated that because Mr. Llobell knew about the fire occurrence on August 13, 1998 and failed to timely report it to Utica First, Utica First would not defend nor indemnify Mario's Painting. (Id.)

2.    <u>Testimony of George Wagner</u>

Mr. Wagner testified that he had no recollection of receiving a phone call from Mrs. Llobell on or about August 13, 1998 to report a fire loss, and that he would never tell a client who called to report a fire "not to worry about it," or not to do anything unless a lawsuit was filed, as Mrs. Llobell has testified that he told her. (Wagner Dep. at 43, 66, 68, 75.) Mr. Wagner further testified that he did not recall receiving the March 31, 1999 letter from Mrs. Llobell, which discussed the loss and enclosed a copy of the summons and complaint in the underlying action. (Id. at 43, 50-51.) Upon review of the "general liability notice of occurrence"

or "Acord form" that he completed on April 5, 1999 and sent to Utica First, Mr. Wagner testified that if there had been a prior notice of loss, it would have been so indicated on this form.  (Id. at 59, 61.)

III.    DISCUSSION

A.  Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to establish the lack of any factual issues.  See id.  Summary judgment is not appropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).  When the moving party has carried its burden, the party opposing the summary judgment motion must do more than simply show that "there is some metaphysical doubt as to the material facts."  Id. at 586.  Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  Anderson, 477 U.S. at 248.

By its terms, Rule 56 does not require the district court judge to make any findings of

fact.  See Anderson, 477 U.S. at 250.  The only inquiry to be performed is the determination of

whether there is a need for trial.  See id.  The court's principal analysis on a motion for summary

judgment is to ascertain whether there are any "genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party."  Id.

      B.    No Entitlement to Summary Judgment Based on Claim that George Wagner Was
                Not an Agent for Purposes of Receiving Notice of Loss

Under New York law, "an insurance broker is the agent of the insured, not the insurance

company, and notice to an insurance broker, absent exceptional circumstances. . . , is not notice

to the insurer."  Philadelphia Indemnity Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F.

Supp. 2d 442, 457 (S.D.N.Y. 2005) (citations omitted) (emphasis in original).  Such exceptional

circumstances have been found in situations where the agent's role "went far beyond that of

solicitor of the liability policy," and included responsibilities such as collecting premiums,

issuing the policy, and being designated as an 'agent or broker' for the insurer."  Id. (quoting

Mighty Midgets, Inic. v. Centennial Ins. Co., 47 N.Y.2d 12, 416 N.Y.S.2d 559, 389 N.E.2d

1080, 1082 (N.Y. 1979)).  "For a broker to become the insurer's agent, there must be evidence of

some action on the insurer's part from which a general authority to represent the insurer may be

inferred."  Philadelphia Indemnity, 379 F. Supp. 2d at 457.  Selling a policy to the insured does

not by itself make the broker an agent of the insurer.  U.S. Underwriters Ins. Co. v. Vittorioso,

No. 97 CV 0075, 1999 WL 167716, at * 2 (E.D.N.Y. Jan. 6, 1999). Furthermore, the use of the

term "agent" in a contract is not conclusive as to whether an agency relationship existed.

Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Ins. Servs., 388 F. Supp. 2d 292, 302

(S.D.N.Y. 2005). Rather, the acts of the individual may determine the category into which the

person falls, and "whether an agency exists hinges predominately on the facts and circumstances of a particular case." Id. (citing Conn. Mut. Life Ins. Co. v. Wolf, No. 93 Civ. 5752, 1997 WL 597064, at *4 (E.D.N.Y. Sept. 24, 1997)).

The question of whether an agency relationship exists is both a question of law and fact. Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Ins. Servs., 388 F. Supp. 2d 292, 301 (S.D.N.Y. 2005) (citing Cabrera v. Jakabovitz, 24 F.3d 372, 385 (1994)). Agency is a question of law for the court where the "'material facts from which [agency] is to be inferred are not in dispute, the question of agency is not open to doubt, and only one reasonable conclusion can be drawn from the facts in the case." Lumbermens Mutual, 388 F. Supp. 2d at 301 (citing Cabrera, 24 F.3d at 386 n.14). However, where the facts are insufficient to support a finding of agency, or there is a dispute as to the facts, "'the question of agency should be submitted to the jury so that it may apply the applicable legal standard . . . to the facts, as the jury finds them.'" Id. (citing Cabrera, 24 F.3d at 385).

Plaintiff here argues that George Wagner was an agent of Utica First who had express and actual authority to accept notices of loss on behalf of Utica First. (Pl.'s Mem. in Opp'n at 7.) Plaintiff relies for support on the Utica First insurance policy issued to Mario's Painting through George Wagner, as well as Wagner's deposition testimony. (Id. at 7.) Plaintiff first relies on the page of the policy headed "contractors special policy declarations page," which is a form with spaces to be filled in by the agent or broker when writing a new policy. (Mario's Painting Insurance Policy, Bates Number 00051, annexed as Exh. 7 to Itkowitz Decl.) The form includes a space for "Named Insured and Mailing Address," beneath which the name "Mario's

Painting Corp." and its address are entered in type.  (Id.)  Adjacent to the space for the named insured and mailing address, the form includes a space for "Agent," next to which an identification number is entered in type, and beneath which the name "George Wagner Associates, Inc." and its address are entered in type.  (Id.)

Plaintiff argues that this section must be construed along with another section of the policy entitled "What Must Be Done in Case of Loss," which states:

> 1.  Notice-
>     a.  In the case of an occurrence, or if an insured becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, the Insured must promptly give notice to us or our agent.

(Mario's Painting Insurance Policy, Bates Number 00064, annexed as Exh. 7 to Itkowitz Decl.)

The plaintiff relies on these portions of the policy to argue that Mr. Wagner was an agent of Utica First and had the express authority from Utica First to accept notice of loss on its behalf. (Pl.'s Mem. at 8.)  The plaintiff also relies on portions of Mr. Wagner's deposition testimony, cited supra, wherein Mr. Wagner states that he was authorized to receive notice of loss on behalf of Utica First.  (Id. at 8-11.)

Defendant argues that the mere fact that Mr. Wagner is labeled as an "agent" on one page of the policy  is not conclusive of the nature of the relationship, because Wagner was only an agent for certain purposes.  (Def.'s Mem. in Supp. at 10.)  Defendant relies on the language of a separate agreement between Mr. Wagner and Utica First (the "Agreement"), which defendant contends "sets forth the limited scope of George Wagner's authority."  (Id. at 9.)  The Agreement, titled "Agency Agreement,"  designates George Wagner Associates as "Agent," and Utica First as "Company."  The Agreement authorizes George Wagner Associates to

> receive and accept proposals for insurance covering such classes of
> risks as the Company may, from time to time, authorize to be
> insured, to collect, receive and receipt for premiums on insurance
> tendered by the Agent and accepted by the Company and to retain
> out of premiums so collected, as full compensation on business so
> placed with the Company, commissions in accordance with t his
> Company's schedule of commissions as may from time to time be
> promulgated.

(Agreement between George Wagner Associates and Utica First, annexed as Exh. 20 to

Declaration of Andrew J. Kurtz ("Kurtz Decl.").)  Defendant maintains, pursuant to the maxim

expressio unius est exclusion alterius, that the express enumeration of certain authorized actions

by Wagner necessarily excludes any other authorization, including the authority to receive notice

of loss. (Def.'s Mem. in Supp. at 9.)

　　　　The insured did not have any access to the separate agreement between Wagner and

Utica First on which defendant relies, and therefore the insured was not on notice as to the

provisions in that agreement, and it is not binding on Mario's Painting.  See Downs v. Del

Regno, 37 A.D.2d 894, 325 N.Y.S.2d 320 (N.Y. App. Div. 3rd Dep't 1971) ("While private

agreements between the agent and the insurance company are effective between themselves, we

know of no authority which permits such agreement to overcome the apparent authority publicly

accepted in the writing of insurance and not in contravention of the terms of a written agency

agreement."); Anderson v. Metropolitan Life Ins. Co., 69 Misc.2d 205, 329 N.Y.S.2d 197 (N.Y.

City Civ. Ct. 1972), aff'd by 75 Misc. 2d 1003, 349 N.Y.S.2d 925 (N.Y. App. Term 1973 )

(finding that an agreement between the insurance company and its agent, of which the insured

had no knowledge, had no effect as to the insured); Forward v. Continental Ins. Co., 37 N.E. 615,

142 N.Y. 382 (N.Y. 1894) ("There is nothing on the face of the policy, and nothing was

communicated to the [insured], to lead him to believe that the powers of the agent were special or restricted. Insurance companies, doing business by agencies at a distance from their principal place of business, are responsible for the acts of the agent, within the general scope of the business intrusted to his care; and no limitations of his authority will be binding on parties with whom he deals, which are not brought to their knowledge.").

On the other hand, the insured ordinarily would have access to the insurance policy which in clear language authorizes the insured to notify "us [Utica First] or our agent." Wagner is labeled as the "agent." In addition, Wagner's actions are fully consistent with the acts of an agent for purposes of receiving notice of loss. Mr. Wagner testified that he took notice of loss claims for Utica First. In this case, upon receiving the written letter of notice from Mrs. Llobell, dated March 31, 1999, and the summons and complaint in the underlying action, Mr. Wagner filled out an "Acord" general notice of liability form and sent it to Utica First, along with Mrs. Llobell's letter and the summons and complaint. There is no dispute that Utica First accepted the Acord from Wagner without objection and without any comment on the procedure utilized. In a letter dated April 13, 1999, it simply acknowledged receipt of the notice of occurrence, and denied indemnification based on the Mario's Painting's alleged failure to timely report it. The facts here sharply conflict with the insurer's contention that Wagner was merely a broker for purposes of notice. See Bennion v. Allstate Ins. Co., 284 A.D. 2d 924, 727 N.Y.S.2d 222 (N.Y. App. Div. 4th Dep't 2001) ("To establish that the broker was acting as the insurer's agent, 'there must be evidence of some action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred.'") (quoting Kamyr, Inc. v. St. Paul Surplus Lines Ins. Co., 152 A.D.2d 62, 66, 547 N.Y.S. 2d 964 (N.Y. App. Div. 3rd Dep't 1989)) (additional citations

omitted).

The doctrine of apparent authority also favors the denial of defendant's motion for summary judgment. Apparent authority "arises when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess. If a third person holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized." Old Republic Ins. Co. v. Hansa World Cargo Service, Inc., 51 F. Supp. 2d 457 (S.D.N.Y. 1999) (citations omitted). Where the principal has voluntarily placed the agent in such a situation that a person of ordinary prudence may be justified in believing that the agent has authority to perform a particular act, apparent authority may exist. Id. Of particular relevance here is American National Fire Insurance Co. v. Kenealy, 72 F.3d 264, 267 (2d. Cir. 1995). The court there affirmed the district court in holding that apparent authority existed where the purported broker was referred to as an "agent" in the insurance policy. Kenealy, 72 F.3d 264 at 267.

Defendant's arguments on the issue of apparent authority are without merit. The defendant may not fault Mario's Painting for failing to make "any effort to determine whether George Wagner was an agent of Utica First for notice of a loss." (Def.'s Mem. at 9.) The Court explicitly rejected this line of reasoning in Kenealy, finding that a consumer who deals with a putative agent has no duty to determine the scope of the agent's authority. Kenealy, 72 F.3d 264 at 269 (quoting Herbert Construction Co. v. Continental Ins. Co., 931 F.2d 989, 995 (2d Cir. 1991) ("[A] recovery based on the doctrine of apparent authority does not require that the third party have inquired into the scope of the agent's authority[.]")).

Further, while the doctrine of apparent authority requires a finding that the principal, rather than the agent, is responsible for the appearance of apparent authority in the agent, this does not mean that the principal is required to have communicated directly with the insured. "The information received by the [insured] may come directly from the principal . . . from authorized statements of the agent [or] from documents or other indicia of authority given by the principal to the agent. . . ." Bank of America, N.A. v. Terra Nova Ins. Co. Ltd., No. 01 Civ. 0646, 2005 WL 1560577, at *5-6 (S.D.N.Y. June 30, 2005) (rejecting insurance company's argument that it could not have misled insured as to agent's authority because it never communicated directly with plaintiffs, and finding apparent authority existed where agent, inter alia, presented itself as insurance company's agent and used documents bearing insurance company's logo).

Finally, the facts here are distinguishable from Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 290 (2d Cir. 2003), relied on by defendant in its reply memorandum. The court there reversed the district court's entry of summary judgment where there were disputed issues of material fact regarding authority to accept loss, including the fact that on the one hand, the producer of the policy accepted an Acord from the broker without objection, but on the other hand the producer of the policy never represented itself as an agent. Here, Wagner, the agent, stated that it was his practice to accept a notice of loss, a practice which was confirmed by the policy language which identified Wagner as the agent, and more specifically, as an agent authorized to accept a notice of loss occurrence. On two occasions– once immediately after the fire and the second on receipt of the summons and complaint– the insured contacted Wagner to put Utica First on notice of the fire. On both occasions Wagner's conduct was consistent with

that of an agent authorized to accept notice of loss under the policy. Further, as noted earlier, both the agent, Wagner, and the insurer, Utica First, accepted the notice of loss without any objection. Based on the foregoing, Utica First's request for summary judgment as to the notice issue is denied.

Lastly, this entire issue is really of academic interest since there is only a lapse of eight days between when Utica First undeniably received notice of loss through Wagner and the insured's notice to Wagner. The claim of untimely notice does not stem from the eight day delay, but rather from the seven and one-half month lapse between the fire and Utica First's receipt of the notice of loss through Wagner. The distinction between a broker and an agent is of relevance where notice is provided to the broker who fails to convey it to the insurer. See, e.g., Philadelphia Indemnity Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 460 (S.D.N.Y. 2005). Here, however, there is no dispute that Wagner– whether as "broker" or "agent"– immediately conveyed the notice of loss, including the summons and complaint, to the insurer, which acknowledges receipt. For the foregoing reasons, Utica First is not entitled to summary judgment on its claim that Wagner was not an authorized agent to receive notice of loss.

C.      Whether the Mario's Painting Had a Good-Faith Reasonable Basis for the Delay in Providing Notice to Utica First is a Disputed Question of Material Fact

Under New York law, with limited exceptions, an insured must comply with the notice provision of an insurance policy in order to obtain coverage under that policy. See Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440-41, 340 N.Y.S. 2d 902, 293 N.E.2d 76 (N.Y. 1972). "Absent a valid excuse, a failure to satisfy the notice requirement

vitiates the policy, and the insurer need not show prejudice before it can assert the defense of noncompliance." Id. (citations omitted). In certain circumstances, it is reasonable for an insured to rely on statements of an insurance broker when the statements are the reason for a delay in providing notice of loss to the insurance company. Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995) (citing Universal Underwriters Ins. Co. v. Patriot Ambulette, Inc., 149 A.D.2d 500, 539 N.Y.S.2d 981, 982 (1989)). In addition, an exception to the strict notice requirement rule exists where the insured's failure to give timely notice was based on a good-faith belief of nonliability. See Green Door Realty, 329 F.3d at 287 (citing Sec. Mut. Ins. Co. of N.Y., at 441). "'But the insured's belief must be reasonable under all the circumstances, and it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstances of the accident or occurrence.'" Id. (citing Sec. Mut. Ins. Co. of N.Y., at 441). The insured bears the burden of proving that the delay was reasonable under the circumstances. Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co., 308 F. Supp. 2d 331, 337 (S.D.N.Y. 2004) (citing Green Door Realty, 329 F.3d 282 at 287; Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 723 (2d Cir. 1992)). The inquiry turns on the reasonableness of the insured's excuse or explanation for the delay in notice under the circumstances, not whether the insured should have anticipated the possibility of a lawsuit. Spa Steel Products Co., Inc. v. Royal Ins., 282 A.D.2d 864, 865 (N.Y. App. Div. 3rd Dep't 2001). "Generally, the question of whether a delay is excusable is a question of fact for the jury, but of course a delay may be unreasonable as a matter of law when either no excuse is advanced or a proffered excuse is meritless." Olin Corp., 966 F.2d at 724 (citing Public Serv. Mut. Ins. Co. v. Levy, 87 Misc.2d 924, 387 N.Y.S.2d 962, 965 (N.Y. Sup. Ct. 1976), aff'd, 57 A.D.2d 794, 395 N.Y.S.2d 1 (N.Y.

App. Div. 1st Dep't 1977)).

Plaintiff offers two arguments in opposition to Utica First's defense of untimely notice. Plaintiff argues that on or about August 13, 1998 (immediately after the fire), Ms. Llobell called Mr. Wagner to notify him of the fire, and Mr. Wagner advised her "not to worry about it" and to do nothing further unless and until Mario's Painting was served with "legal papers." (Pl.'s Mem. in Opp'n at 16.) Plaintiff argues that Mario's Painting reasonably relied on Mr. Wagner's advice, and for this reason Mario's Painting delayed further notice, as instructed, until it received a summons and complaint, which it provided to Mr. Wagner on March 31, 1999. Plaintiff further maintains that prior to receipt of a summons and complaint in March 1999, Mario Llobell had a reasonable, good-faith belief that neither his actions nor those of his employees caused the fire. (Id. at 11.)

There are disputed questions of material fact with respect to the insured's contact with Wagner on August 13, 1998. It is disputed by Wagner that Mrs. Llobell was told not to do anything unless and until Mario's Painting was served with legal papers. The second disputed issue of material fact is whether Mario's Painting's delay was predicated on a good faith belief that it was not responsible for the fire. This too is a question for the trier of the facts. Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co., 308 F. Supp. 2d 331, 338 (S.D.N.Y. 2004) (denying summary judgment where issue of fact existed as to whether delay was reasonable). The presence of these significant disputed questions of material fact prevents resolution of the case on a motion for summary judgment.

IV.     CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied.

SO ORDERED.

Dated: Central Islip, New York
      June 29, 2006

                             /s/ E. Thomas Boyle
                             E. Thomas Boyle
                             United States Magistrate Judge